141 P.3d 490

STATE of Hawai'i, Plaintiff–Appellee,

v.

Denise RIBBEL, Defendant–Appellant.

No. 26525.

Intermediate Court of Appeals of Hawai'i.

June 6, 2006.

Certiorari Granted Aug. 22, 2006.

Denise Ribbel, defendant-appellant, pro se.

Peter A. Hanano, deputy prosecuting attorney, County of Maui, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE, and FUJISE, JJ.

Opinion of the Court by WATANABE, J.

This appeal stems from a seat belt enforcement campaign conducted by the Maui Police Department (MPD) on November 18, 2003 that resulted in Defendant–Appellant Denise Ribbel (Ribbel) being cited for operating a motor vehicle on a public highway without a

seat belt, in violation of Hawaii Revised Statutes (HRS) § 291–11.6 (Supp.2005) (the seat belt statute). It was undisputed at trial that when Ribbel was cited, she was wearing the lap portion of the seat belt. She was also wearing the shoulder harness portion of the seat belt, although it was tucked under her left arm rather than over her shoulder. Ribbel's defense at trial was that, based on the undisputed evidence, she was restrained by a seat belt assembly, as required by the seat belt statute.

The District Court of the Second Circuit (the district court or the court)[1] rejected Ribbel's defense and concluded that the seat belt was "meant to be worn the way it's assembled properly, over the shoulder and across the lap" and that wearing the shoulder harness under an armpit constituted "an illegal use of the assembly." Accordingly, the district court found Ribbel "guilty" of violating the seat belt statute, entered judgment for Plaintiff–Appellee State of Hawai'i (the State), and ordered Ribbel to pay fines, fees, and costs amounting to $77.00.

This appeal from the district court's written Judgment, entered on April 19, 2004, followed. We reverse and remand for dismissal of the charge against Ribbel and the refund to Ribbel of any fines, fees, and costs that may have been paid by her.

FACTUAL BACKGROUND

On November 18, 2003, Officer Keith Taguma (Officer Taguma) was working on MPD's seat belt enforcement team, "specifically looking for any motor vehicle travelling on a public roadway with any front seat passengers unrestrained or any children in the rear seats unrestrained." Shortly before 2:50 p.m., he observed a "two[-]door Ford, about a[n] '80 something model" headed "eastbound on Wakea Avenue toward the Lono Avenue intersection." Officer Taguma noticed that the seat belt assembly of the driver of the vehicle was "pulled down tucked under [the driver's] left arm." Officer Taguma thereupon activated the lights on his police car, pulled the vehicle over, and cited Ribbel, the driver, for violating the seat belt statute.

At Ribbel's trial, Officer Taguma explained how he could tell that the shoulder harness of the seat belt was under Ribbel's arm:

First of all, the portion, one piece assembly, the belt pulls out from the side panel of the vehicle. When you pull it out and you put the male portion into the female portion on the right side of the seat, the shoulder harness should be over your shoulder blade, down in front you to secure your upper body from front movement. The lap belt would come out from the bottom and be strapped over your lower pelvis area and that secures your body into the chair.

On [Ribbel's] belt, the belt was pulled down. You could clearly see the buckle was hanging straight down and under the left arm. There was no shoulder harness over her body.

Officer Taguma testified that Ribbel was not in an emergency vehicle, mass transit vehicle, or taxi cab. Additionally, Ribbel did not have any visible physical condition that would prevent her use of a seat belt, and she did not mention any such condition.

Officer Taguma stated that upon approaching Ribbel's vehicle, he informed Ribbel that she was in violation of the seat belt statute because "the seat belt assembly [was] not properly worn[.]" On cross-examination, Officer Taguma confirmed that when he stopped the vehicle, Ribbel had her lap belt on, but her shoulder harness was tucked under her arm.

The following colloquy then ensued between the district court and Ribbel:

THE COURT: . . . .

What's your defense? That's not the proper way.

[RIBBEL]: I had the seat belt on.

THE COURT: When you wear it like that you violating the seat belt. It's meant to protect—

[RIBBEL]: Your Honor, if I may. I went and looked in the HRC's (sic) and it says you have to wear the seat belt assembly, and I do. I wear, you know, the lap belt, and then I tuck it under my arm,

1. The Honorable Reinette W. Cooper presided.

across this way and under my arm, because my car is a convertible. Where the retractor thing—where it comes out of the door panel—the side panel of the car, it's down below my shoulder.

If you need to know why I do it this way is because it pulls down on my shoulder and my arm will go to sleep and it hurts first, and then it goes to sleep. And it takes awhile to get it back and so that's not safe to operate the car. So when I have to drive I put it across and under here.

THE COURT: You going lose. With that argument you already losing.

[RIBBEL]: But I have it on.

THE COURT: No, no. The seat belt assembly is made to be worn—

[RIBBEL]: So I should just go ahead and go without it.

THE COURT: Then you get seat belt. It's meant to be worn the way it's assembled properly, over the shoulder and across the lap. You can not [ (sic) ] just decide on your own that now the shoulder harness, you going to put under your armpit. That's an illegal use of the assembly.

So you really have no defense. If you're saying, well, your arm—

[RIBBEL]: I was wearing the seat belt though.

THE COURT: No, wearing the seat belt is wearing it—wearing the assembly the way it's made to be worn is not under the armpit. All of the literature show that that will cause more injury rather than less injury. That's why they make it to go over your upper torso, not under your arm.

[RIBBEL]: I was—I was wearing—I had it buckled. I feel that is safer to at least have that and across here—

THE COURT: Well, if you feel—

[RIBBEL]:—then to not where [ (sic) ] it at all is what I'm saying.

THE COURT:—you feel it's safer, but the experts will tell you you endangering yourself more.

[RIBBEL]: Well, it's—at least I had it plugged in.

THE COURT: All right, I'm going to find in favor of the State. You pay the 45,

the 10 neuro trauma, 15 admin, $7.00 driver's ed.

Seat belt is not meant to be worn the way you think it should be worn. It's made to be worn the way the manufacturer invented it to be worn.

## DISCUSSION

### A.

■ HRS § 291–11.6 provides currently, as it did when Ribbel was cited for violating the statute, in relevant part, as follows:

**Mandatory use of seat belts, when, penalty.**

(a) Except as otherwise provided by law, no person:

(1) Shall operate a motor vehicle upon any public highway unless the person *is restrained* by a seat belt assembly and any passengers in the front or back seat of the motor vehicle are restrained by a seat belt assembly if between the ages of four and fourteen, or are restrained pursuant to section 291–11.5 if under the age of four[.]

. . . .

As used in this section "seat belt assembly" means the seat belt assembly required to be in the motor vehicle under any federal motor vehicle safety standard issued pursuant to Public Law 89–563, the federal National Traffic and Motor Vehicle Safety Act of 1966, as amended, unless original replacement seat belt assemblies are not readily available. If replacement assemblies are not readily available, seat belts of federally approved materials with similar protective characteristics may be used. Such replacement seat belt assemblies shall be permanently marked by the belt manufacturer indicating compliance with all applicable federal standards.

(b) The passengers of the following motor vehicles shall be exempt from the requirements of this section: emergency and mass transit vehicles. Further exemptions from this section may be established by rules adopted by the department of transportation pursuant to chapter 91.

. . . .

(c) No person shall be guilty of violating this section if:

    (1) The person is in a motor vehicle which is not required to be equipped with a seat belt assembly under any federal motor vehicle safety standard unless the vehicle is in fact equipped with a seat belt assembly;

    (2) The person not restrained by a seat belt assembly is in a vehicle in which the number of persons exceeds the number of seat belt assemblies available in the vehicle or the number of seat belt assemblies originally installed in the vehicle, whichever is greater; provided that all available seat belt assemblies are being used to restrain passengers;

    (3) The person not restrained by a seat belt assembly has a condition which prevents appropriate restraint by the seat belt assembly; provided such condition is duly certified by a physician who shall state the nature of the condition, as well as the reason such restraint is inappropriate;

    (4) The person not restrained by a seat belt assembly is operating a taxicab or other motor vehicle utilized in performing a bona fide metered taxicab service which is regulated under chapter 269 or by county ordinance and is carrying passengers in the vehicle in the course of performing taxicab services; or

    (5) Otherwise exempted by rules adopted by the department of transportation pursuant to chapter 91.

(Emphasis added.)

The seat belt statute thus requires a motor vehicle operator to be "restrained" by a seat belt assembly meeting the specific federal safety standards for the vehicle being driven by the operator.

When Ribbel was cited, she was operating a 1984 Ford convertible. Pursuant to Standard No. 208, Occupant Crash Protection, 49 Code of Federal Regulations (C.F.R.) § 571.208 (2005), convertible and open-body type passenger vehicles manufactured on or after September 1, 1973 and before September 1, 1986

shall at each designated seating position have a Type 1 or Type 2 seat belt assembly that conforms to Standard No. 209 (§ 571.209) and to S7.1 and S7.2 of this standard, and at each front designated seating position have a seat belt warning system that conforms to S7.3.

49 C.F.R. § 571.208, S4.1.2.3.2.

Standard No. 209, Seat Belt Assemblies, 49 C.F.R. § 571.209, S3 (2005) defines a "Type 1 seat belt assembly" as "a lap belt for pelvic restraint." The same rule defines a "Type 2 seat belt assembly" as "a combination of pelvic and upper torso restraints." *Id.*

It is undisputed that Ribbel's vehicle was outfitted with a Type 2 seat belt assembly that met federal regulatory standards.

██ The dispositive issue in this case, therefore, is whether Ribbel was "restrained by a seat belt assembly" when she wore her vehicle's Type 2 seat belt assembly, buckled, with the lap belt running across her lap and the shoulder harness tucked beneath her left arm. This involves the interpretation of a statute, "a question of law reviewable de novo." *Ka Pa'akai O Ka'aina v. Land Use Comm'n*, 94 Hawai'i 31, 41, 7 P.3d 1068, 1078 (2000) (quotation marks omitted).

Based on our *de novo* review, we conclude that Ribbel was restrained by a seat belt assembly.

**B.**

██ The Hawai'i Supreme Court has repeatedly instructed that

[w]hen construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, *which is to be obtained primarily from the language contained in the statute itself.* And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

*State v. March*, 94 Hawai'i 250, 253, 11 P.3d 1094, 1097 (2000) (quoting *State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999)) (emphasis added). Furthermore, "[w]here

the statutory *language is unambiguous,* the court's *sole duty* is to give effect to *its plain and obvious meaning." State v. Sakamoto,* 101 Hawai'i 409, 412, 70 P.3d 635, 638 (2003) (citations omitted, emphases added). "Departure from the literal construction of a statute is justified only when such construction would produce an absurd and unjust result and the literal construction is clearly inconsistent with the purposes and policies of the statute." *State v. Villeza,* 85 Hawai'i 258, 273, 942 P.2d 522, 537 (1997) (citations omitted).

The language of the seat belt statute literally requires only that a person operating a motor vehicle upon a public highway be *"restrained* by a seat belt assembly[.]" The statute does not state that the operator must be *properly restrained* or that the seat belt assembly must be worn in a particular manner. Indeed, except for requiring that the motorist be "restrained" by the assembly, the statute is completely silent as to the way the seat belt assembly is to be used.

The term "restrained" is not defined in the seat belt statute. However, the *Merriam-Webster's Collegiate Dictionary* (10th ed.2000) defines "restrained" as "marked by restraint" and defines "restraint" as "a device that restricts movement <a ~ for children riding in cars>[.]" *Id.* at 996. Under this definition, Ribbel was clearly "restrained" by her seat belt assembly since it is undisputed that her seat belt was buckled, the lap portion of the seat belt covered her lap, and the shoulder harness portion of the seat belt was tucked under her arm and across her torso, thereby restricting Ribbel's movement.

### C.

The State does not argue that the meaning of "restrained" is ambiguous. It argues instead that, based on the legislative history of the seat belt statute and the requirements of various federal laws upon which the seat belt statute was predicated, the Hawai'i Legislature clearly intended the term "restrained by a seat belt assembly" to mean *"properly restrained"* by a seat belt assembly. Answering Brief at 12. (Emphasis added.)

We note, however, that unlike the seat belt statute at issue in this case, HRS § 291–11.5 (Supp.2005), which governs the usage of child passenger restraints, provides, in relevant part, as follows:

**Child passenger restraints.** (a) Except as otherwise provided in this section, no person operating a motor vehicle on a public highway in the State shall transport a child under four years of age unless the person operating the motor vehicle ensures that the child is *properly* restrained in a child passenger restraint system approved by the United States Department of Transportation at the time of its manufacture.

(Emphasis added.) Regarding different statutes that address the same subject matter, the general rule is that

"laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another. Where a statute with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed."

*Villeza,* 85 Hawai'i at 273, 942 P.2d at 537 (brackets, citations, and some quotation marks omitted).

The legislature specifically required children under the age of four to be "properly restrained" in a child-restraint seat. However, it did not include a similar requirement for use of a vehicle's seat belt assembly by operators or passengers four years of age and older. *See* HRS § 291–11.6(a). Since our case law requires us to construe the legislature's omission of the adverb "properly" as intentional, we decline the prosecution's invitation to insert "properly" into the seat belt statute.

### D.

Several cases from New York have similarly struck down convictions for driving a motor vehicle without wearing a seat belt or driving a vehicle with a passenger not restrained by a seat belt, where the motorist or

passenger was restrained by a lap seat belt but wearing a shoulder harness seat belt in a manner other than over the shoulder.

In *People v. Cucinello,* 183 Misc.2d 50, 701 N.Y.S.2d 599 (Sup.App. Term 1999), the defendant was convicted of operating a motor vehicle with her front-seat passenger, who was under the age of sixteen, not restrained by a safety belt. The defendant's vehicle, a 1992 Geo Prism, was equipped with lap and shoulder belts that were not in one piece. The passenger was wearing his lap belt, but not the shoulder harness "because it 'hits' him too high on the shoulder and bothers him." *Id.* at 600. The trial court found the defendant guilty, stating that "all individuals were required to wear both lap and shoulder restraints when a vehicle was equipped with both." *Id.*

On appeal, the New York Supreme Court, Appellate Term, reversed. The court held:

The question of whether defendant was guilty of violating the subject provision because her son was wearing a lap belt and leaving the shoulder harness unconnected, however, requires a careful perusal of the statutory language itself. Vehicle and Traffic Law § 1229–c(2) uses the term, "safety belt," in the singular when it states, "No person shall operate a motor vehicle unless all front seat passengers under the age of sixteen are restrained by *a safety belt*" (emphasis added). While the term, "safety belt," is not expressly defined in the statute, said term can refer to either "seat safety belts" or "shoulder harness safety belts" (*see,* Vehicle and Traffic Law § 383[4–a][5]; 15 NYCRR 49.2[b] ).

Inasmuch as defendant's son was restrained by a safety belt, viz., a seat safety belt, defendant should not have been deemed in violation of Vehicle and Traffic Law § 1229–c.

*Id.* (ellipsis omitted).

In *People v. Widrick,* 185 Misc.2d 765, 713 N.Y.S.2d 847 (City Ct.2000), the single issue presented was whether the driver or passenger in the front seat of a motor vehicle was required to use the shoulder harness safety belt if the lap safety belt was connected at a single connection point. The statute that the defendants were cited for violating provided as follows: "No person shall operate a motor vehicle unless such person is restrained by a safety belt approved by the commissioner. No person shall be a passenger in the front seat of a motor vehicle unless such person is restrained by a safety belt approved by the commissioner." *Id.* at 849 (quotation marks and ellipsis omitted).

All of the defendants in *Widrick* had the lap portion of their seat belts engaged at the time they were stopped by a police officer for violating the seat belt law. Two defendants were wearing the shoulder harness portion of the seat belt behind their shoulders, and two defendants were wearing the shoulder harness portion under, rather than over, their arms. The defendants argued that their use of the lap seat belt, regardless of whether or how they used the shoulder harness safety belt, complied with the statutory requirements. The court agreed, concluding:

Since the clear wording of the statute refers to the singular belt and not the plural "belts," a person who uses either the "seat safety belt" or "harness safety belt" would be in compliance with the statute. If the legislature and/or Commissioner expected both belts to be used together the statute and regulations could have been so worded to provide for that requirement.

*Id.* at 851. The court also stated:

The issue is not the particular format used by a motor vehicle manufacturer to comply with New York Law but, rather, the issue is whether a citizen riding in the vehicle must use (in these cases) the shoulder harness safety belt in conjunction with the seat (lap) safety belt.

The right to decide whether to use the shoulder harness safety belt by the Defendants in this case is found in the wording of the statute and not in the design model of the safety belt restraints used in a particular motor vehicle.

In these cases the credible evidence shows that all the Defendants were wearing the seat safety belt (lap belt) connected as required. Two Defendants had elected to use the shoulder harness safety belt in a fashion that was comfortable for them by

placing it under their arm and two defendants elected not to use the shoulder harness safety belt by putting it behind their shoulders.

These practices of the Defendants reflect the same choice many people make because the "one size fits all" shoulder harness strap based on a person's physical characteristics either crosses over the neck, throat, cheek and/or under the chin or fits so snugly that it is too tight to be comfortable or so loosely that the shoulder harness safety belt hangs free, leaving a gap between the person and the shoulder strap.

The normal reaction of an American citizen is to relieve the discomfort of the shoulder harness safety belt strap by crossing it under the arm, holding it away with the hand or placing it behind the shoulders in the case of the passive restraint and shoulder harness safety belt using the same connection point as the seat safety belt (lap). In cars with a shoulder harness safety belt with a separate connection as in *Cucinello* it is not used with the lap safety belt.

The decision then by the Defendants to place the shoulder harness safety belt behind their shoulders or under their arms with the seat safety belt (lap) in place and connected was not a violation of Vehicle and Traffic Law Section 1229–c(3), which requires only that a single "safety belt" be used[.]

*Id.* (citation omitted).

In *People v. Locke*, the City of Watertown prosecuted a defendant for violating the New York seat belt statute, which had been amended in response to *Cucinello* and *Widrick* to read, in relevant part, as follows: "[I]t shall be a violation of this section if a person is seated in a seating position equipped with both a lap safety belt and a shoulder harness belt and such person *is not restrained* by both such lap safety belt and shoulder harness belt." *People v. Locke*, 1 Misc.3d 482, 765 N.Y.S.2d 468, 469 (City Ct.2003) (quoting N.Y. Vehicle and Traffic Law § 1229–c, subd. 3–a (McKinney 2003)) (quotation marks omitted, emphasis added). Locke had been cited for wearing her vehicle's shoulder harness belt under her arm, rather than over her shoulder. In dismissing the charge against her, the court held:

[T]he plain wording of the statute required [the defendant] to be "restrained" by both belts not that the top belt be placed over or under her arm. In either location, once this top belt is secured it will "restrain" the upper body of the person wearing it.

In fact, when the top belt is placed under the arm then all persons so secured are equally protected. This would not be the case of people at either end of the height spectrum where the length of their torso results in these "one size fits all" top belts either crossing too high above the shoulder (short stature) or too low so as to cross below it over the upper arm of those of a tall stature.

The goal of seatbelts is to protect one from injuries if there is an accident and it is clear that the use of seatbelts that restrain the user is all the statute requires. The officer's conclusion that a seat belt must be worn "over the shoulder" to be "properly worn" to comply with the statute is not supported by the wording of the statute nor with the fact that in the case of child users 4–7 the 'over the shoulder' position of the belt which causes it to run over their "face or neck" fails to protect them in the case of an accident. . . .

If the top portion of the seat belt should be worn "over the shoulder" to comply with the law which now only requires it to be worn so a person is "restrained" by both the lap and shoulder belt, to comply with the clear wording of the statute the legislature should so word the statute to say where the top belt should be placed to restrain the user to prevent the injuries the belts were designed to protect against. It is clear that "over the shoulder" position does not do this in children ages 4–7 nor could it in the case of people too short or too tall for the top strap to cross over the same shoulder area where it might on the "average adult male."

It is incumbent upon the legislature to reword the statute to make it certain whether the top belt should be worn over the shoulder or under it (under the arm) to

properly comply with the statutory mandate so as to "provide sufficient notice of what conduct is prohibited and second . . . not to be written in such a manner as to permit or encourage arbitrary and discriminatory enforcement."

*Locke,* 765 N.Y.S.2d at 470–71 (ellipses, brackets, and citation omitted).

We agree with the reasoning of the New York cases.

## CONCLUSION

For the foregoing reasons, we reverse the April 19, 2004 Judgment of the District Court of the Second Circuit and remand this case to the district court, with instructions that the charge against Defendant–Appellant Denise Ribbel be dismissed and any fines, fees, and costs that may have been paid by Ribbel be refunded to her.