142 P.3d 290

**STATE of Hawai'i, Petitioner/Plaintiff–Appellee,**

v.

**Denise RIBBEL, Respondent/Defendant–Appellant.**

**No. 26525.**

Supreme Court of Hawai'i.

Sept. 8, 2006.

Peter A. Hanano, Deputy Prosecuting Attorney, for petitioner/ plaintiff-appellee State of Hawai'i.

MOON, C.J., NAKAYAMA, ACOBA, and DUFFY, JJ.; and LEVINSON, J., Dissenting.

Opinion of the Court by DUFFY, J.

On July 6, 2006, Petitioner/Plaintiff–Appellee State of Hawai'i [hereinafter, State [1]] filed a timely Application for Writ of

1. The State of Hawai'i is referred to herein as the "State" rather than the "prosecution" because a traffic infraction is a civil matter rather than a criminal offense. Hawai'i Revised Statutes (HRS) § 291D–1 (1993) (noting the decriminal- ization of traffic infractions); HRS § 291D–2 (1993) (stating that "all violations of statutes, ordinances, or rules relating to traffic movement and control, including parking, standing, equipment, and pedestrian offenses, for which the

Certiorari (Application), requesting that this court review the published opinion of the Intermediate Court of Appeals (ICA) in *State v. Ribbel*, 111 Hawai'i 317, 141 P.3d 490 (Haw.App.2006), which reversed the District Court of the Second Circuit's March 31, 2004 Judgment, finding Respondent/Defendant–Appellant Denise Ribbel "guilty" of violating HRS § 291–11.6 (Supp.2003), "Mandatory use of seat belts, when, penalty" [hereinafter, seat belt statute].[2] The State asserts that the ICA gravely erred: (1) because its literal construction of the seat belt statute failed to effectuate the statute's plain and obvious meaning as intended by the Hawai'i State Legislature; and (2) in concluding that the seat belt statute is ambiguous, but then ignoring the statute's legislative history. On August 22, 2006, we accepted the State's Application. We now reverse the ICA's decision and affirm the district court's determination that Ribbel violated HRS § 291–11.6. However, because the district court erroneously found Ribbel "guilty" of the offense, which is a civil traffic infraction rather than a crime, *see supra* note 1, we vacate the judgment and remand to the district court for entry of a replacement judgment in favor of the State that complies with the applicable statutes governing traffic infractions. *See State v. Stoa*, No. 26272, 112 Hawai'i 260, 261, 145 P.3d 803, 804, 2006 WL 2255646, at *1 (App. August 7, 2006) (affirming the district court's determination that the defendant committed a traffic violation, but vacating the judgment and remanding for entry of a replacement judgment in favor of the State that complies with the applicable statutes governing traffic infractions) (citing *State v. Rees*, 107 Hawai'i 508, 115 P.3d 687, *reconsideration denied*, 108 Hawai'i 76, 116 P.3d 718 (App.2005), *cert. denied*, 108 Hawai'i 59, 116 P.3d 701 (2005)).

## I. BACKGROUND

The undisputed facts, as stated by the ICA, are as follows:

prescribed penalties do not include imprisonment" constitute civil "traffic infractions"); *see State v. West*, 95 Hawai'i 22, 23 n. 1, 18 P.3d 884, 885 n. 1 (2001) (referring to the State of Hawai'i as the "State" rather than the "prosecution" in a traffic infraction case).

On November 18, 2003, Officer Keith Taguma (Officer Taguma) was working on [Maui Police Department's (MPD)] seat belt enforcement team, "specifically looking for any motor vehicle travelling on a public roadway with any front seat passengers unrestrained or any children in the rear seats unrestrained." Shortly before 2:50 p.m., he observed a "two[-]door [1984] Ford ..." headed "eastbound on Wakea Avenue toward the Lono Avenue intersection." Officer Taguma noticed that the seat belt assembly of the driver of the vehicle was "pulled down tucked under [the driver's] left arm." Officer Taguma thereupon activated the lights on his police car, pulled the vehicle over, and cited Ribbel, the driver, for violating the seat belt statute.

At Ribbel's trial, Officer Taguma explained how he could tell that the shoulder harness of the seat belt was under Ribbel's arm:

First of all, the portion, one piece assembly, the belt pulls out from the side panel of the vehicle. When you pull it out and you put the male portion into the female portion on the right side of the seat, the shoulder harness should be over your shoulder blade, down in front you to secure your upper body from front movement. The lap belt would come out from the bottom and be strapped over your lower pelvis area and that secures your body into the chair.

On [Ribbel's] belt, the belt was pulled down. You could clearly see the buckle was hanging straight down and under the left arm. There was no shoulder harness over her body.

Officer Taguma testified that Ribbel was not in an emergency vehicle, mass transit vehicle, or taxi cab. Additionally, Ribbel did not have any visible physical condition that would prevent her use of a seat belt,

2. The Honorable Reinette W. Cooper presided over this matter.

and she did not mention any such condition.

Officer Taguma stated that upon approaching Ribbel's vehicle, he informed Ribbel that she was in violation of the seat belt statute because "the seat belt assembly [was] not properly worn[.]" On cross-examination, Officer Taguma confirmed that when he stopped the vehicle, Ribbel had her lap belt on, but her shoulder harness was tucked under her arm.

The following colloquy then ensued between the district court and Ribbel:

THE COURT:....

What's your defense? That's not the proper way.

[RIBBEL]: I had the seat belt on.

THE COURT: When you wear it like that you violating the seat belt. It's meant to protect—

[RIBBEL]: Your Honor, if I may. I went and looked in the HRC's (sic) and it says you have to wear the seat belt assembly, and I do. I wear, you know, the lap belt, and then I tuck it under my arm, across this way and under my arm, because my car is a convertible. Where the retractor thing—where it comes out of the door panel—the side panel of the car, it's down below my shoulder.

If you need to know why I do it this way is because it pulls down on my shoulder and my arm will go to sleep and it hurts first, and then it goes to sleep. And it takes awhile to get it back and so that's not safe to operate the car.[3] So when I have to drive I put it across and under here.

THE COURT: You going lose. With that argument you already losing.

[RIBBEL]: But I have it on.

THE COURT: No, no. The seat belt assembly is made to be worn—

[RIBBEL]: So I should just go ahead and go without it.

THE COURT: Then you get seat belt. It's meant to be worn the way it's assembled properly, over the shoulder and across the lap. You can not [ (sic) ] just decide on your own that now the shoulder harness, you going to put under your armpit. That's an illegal use of the assembly.

So you really have no defense. If you're saying, well, your arm—

[RIBBEL]: I was wearing the seat belt though.

THE COURT: No, wearing the seat belt is wearing it—wearing the assembly the way it's made to be worn is not under the armpit. All of the literature show that that will cause more injury rather than less injury. That's why they make it to go over your upper torso, not under your arm.

[RIBBEL]: I was—I was wearing—I had it buckled. I feel that is safer to at least have that and across here—

THE COURT: Well, if you feel—

[RIBBEL]:—then to not where [ (sic) ] it at all is what I'm saying.

THE COURT:—you feel it's safer, but the experts will tell you you endangering yourself more.

[RIBBEL]: Well, it's—at least I had it plugged in.

THE COURT: All right, I'm going to find in favor of the State. You pay the 45, the 10 neuro trauma, 15 admin, $7.00 driver's ed.

Seat belt is not meant to be worn the way you think it should be worn. It's

---

**3.** We note that HRS § 291–11.6(c)(3) (1993) provides:

   (c) No person shall be guilty of violating this section if:

    ....

    (3) The person not restrained by a seat belt assembly has a condition which prevents appropriate restraint by the seat belt assembly; *provided such condition is duly certified by a physician* who shall state the nature of the

condition, as well as the reason such restraint is inappropriate[.]

(Emphasis added.) However, Ribbel did not provide any evidence that her alleged condition was "duly certified by a physician."

We also emphasize that, although HRS § 291–11.6(c) improperly uses the word "guilty," a violation of HRS § 291–11.6 is a civil traffic infraction and not a criminal offense. *See supra* note 1.

made to be worn the way the manufacturer invented it to be worn.

*Ribbel*, 111 Hawai'i at 318–19, 141 P.3d at 491–92 (some alterations in original). Officer Taguma also testified that wearing the seat belt in the manner in which Ribbel wore the shoulder harness could cause more severe injuries to one's upper body, as well as injuries to one's internal organs where the seat belt rides.

On March 31, 2004, the district court entered judgment for the State, finding Ribbel "guilty" of violating the seat belt statute and ordering Ribbel to pay fines, fees, and costs amounting to $77.00. On April 16, 2004, Ribbel filed her Notice of Appeal.

In its June 6, 2006 published opinion, the ICA reversed and remanded for "dismissal of the charge against Ribbel and the refund to Ribbel of any fines, fees, and costs that may have been paid by her[,]" *Ribbel*, 111 Hawai'i at 318, 141 P.3d at 491, concluding that Ribbel was "restrained by a seat belt assembly" in conformance with the seat belt statute. Specifically, the ICA stated:

> The language of the seat belt statute literally requires only that a person operating a motor vehicle upon a public highway be "*restrained* by a seat belt assembly[.]" The statute does not state that the operator must be *properly restrained* or that the seat belt assembly must be worn in a particular manner. Indeed, except for requiring that the motorist be "restrained" by the assembly, the statute is completely silent as to the way the seat belt assembly is to be used.

> The term "restrained" is not defined in the seat belt statute. However, the *Merriam–Webster's Collegiate Dictionary* (10th ed.2000) defines "restrained" as "marked by restraint" and defines "restraint" as "a device that restricts movement <a ˜for children riding in cars>[.]" *Id.* at 996. Under this definition, Ribbel was clearly "restrained" by her seat belt assembly since it is undisputed that her seat belt was buckled, the lap portion of the seat belt covered her lap, and the shoulder harness portion of the seat belt was tucked under her arm and across her

torso, *thereby restricting Ribbel's movement.*

*Ribbel*, 111 Hawai'i at 321, 141 P.3d at 494 (final emphasis added) (alterations in original). Comparing HRS § 291–11.5 (Supp. 2005), which governs the usage of child passenger restraints, to HRS § 291–11.6, the ICA further reasoned:

> The State does not argue that the meaning of "restrained" is ambiguous. It argues instead that, based on the legislative history of the seat belt statute and the requirements of various federal laws upon which the seat belt statute was predicated, the Hawai'i Legislature clearly intended the term "restrained by a seat belt assembly" to mean "*properly* restrained" by a seat belt assembly. Answering Brief at 12. (Emphasis added.)

> We note, however, that unlike the seat belt statute at issue in this case, HRS 291–11.5 (Supp.2005), which governs the usage of child passenger restraints, provides, in relevant part, as follows:

> > **Child passenger restraints.** (a) Except as otherwise provided in this section, no person operating a motor vehicle on a public highway in the State shall transport a child under four years of age unless the person operating the motor vehicle ensures that the child is *properly* restrained in a child passenger restraint system approved by the United States Department of Transportation at the time of its manufacture.

(Emphasis added.) Regarding different statutes that address the same subject matter, the general rule is that

> "laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another. Where a statute with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed."

*[State v.] Villeza,* 85 Hawai'i [258,] 273, 942 P.2d [522,] 537 [ (1997) ] (brackets, citations, and some quotation marks omitted).

The legislature specifically required children under the age of four to be "properly restrained" in a child-restraint seat. However, it did not include a similar requirement for use of a vehicle's seat belt assembly by operators or passengers four years of age and older. *See* HRS § 291–11.6. Since our case law requires us to construe the legislature's omission of the adverb "properly" as intentional, we decline the prosecution's invitation to insert "properly" into the seat belt statute.

*Ribbel,* 111 Hawai'i at 321, 141 P.3d at 494 (emphases in original). Finally, the ICA cited with approval several cases from New York, which "struck down convictions for driving a motor vehicle without wearing a seat belt or driving a vehicle with a passenger not restrained by a seat belt, where the motorist or passenger was restrained by a lap seat belt, but wearing a shoulder harness seat belt in a manner other than over the shoulder." *Id.*

On July 6, 2006, the State filed an application for certiorari, which this court dismissed without prejudice because the ICA had not entered a judgment on appeal. On July 19, 2006, the ICA filed the Judgment on Appeal. The State filed this timely Application on August 2, 2006.

## II. STANDARD OF REVIEW

### A. Application for Writ of Certiorari

(a) After issuance of the intermediate appellate court's judgment or dismissal order, a party may seek review of the intermediate appellate court's decision and judgment or dismissal order only by application to the supreme court for a writ of certiorari, the acceptance or rejection of which shall be discretionary upon the supreme court.

(b) The application for writ of certiorari shall tersely state its grounds, which shall include:

(1) Grave errors of law or of fact; or

(2) Obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision,

and the magnitude of those errors or inconsistencies dictating the need for further appeal.

2006 Haw. Sess. L. Act 149, § 1 (amending HRS § 602–59 (Supp.2005)).

### B. Statutory Interpretation

■ Statutory interpretation is "a question of law reviewable *de novo." State v. Levi,* 102 Hawai'i 282, 285, 75 P.3d 1173, 1176 (2003) (quoting *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)). This court's statutory construction is guided by established rules:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, *where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.* Third, implicit in the task of statutory construction is our *foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.* Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Peterson v. Hawaii Elec. Light Co., Inc.,* 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997), *superseded on other grounds by* HRS § 269–15.5 (Supp.1999) (block quotation format, brackets, citations, and quotation marks omitted) (emphases added).

## III. DISCUSSION

The State contends that the ICA gravely erred because its construction of the seat belt statute failed to effectuate the statute's plain and obvious meaning as intended by the Hawai'i State Legislature. We agree.

A. *Because the Language of the Seat Belt Statute is Plain and Unambiguous, Our Sole Duty Is to Give Effect to Its Plain and Obvious Meaning As Intended By the Legislature.*

HRS § 291–11.6, entitled "Mandatory use of seat belts, when, penalty" provides in relevant part:

(a) Except as otherwise provided by law, no person:

(1) Shall operate a motor vehicle upon any public highway unless the person is *restrained by a seat belt assembly*[.]

. . . .

As used in this section "seat belt assembly" means the seat belt assembly required to be in the motor vehicle under any federal motor vehicle safety standard issued pursuant to Public Law 89–563, the federal National Traffic and Motor Vehicle Safety Act of 1966, as amended, unless original replacement seat belt assemblies are not readily available[.]

The ICA concluded that because this statute does not expressly require that a motorist be *properly* restrained by a seat belt assembly or prescribe a specific manner in which the seat belt assembly must be worn, Ribbel did not violate the statute inasmuch as she was "restrained," albeit improperly, "by a seat belt assembly" insofar as the seat belt "restrict[ed] Ribbel's movement." *Ribbel*, 111 Hawai'i at 321, 141 P.3d at 494. This interpretation does not give effect to either the plain and obvious meaning of the statutory language or the intention of the legislature as expressed in that language.

■ First, the plain and obvious meaning of this statute is to require motorists to utilize the seat belt assembly in the manner in which it was designed to be worn so as to prevent injury and death. HRS § 1–14 (1993) provides that "[t]he words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning." As the district court noted, it is generally understood that requiring a person to be restrained by a seat belt assembly is requiring the lap belt portion to be worn over the lap and the upper torso belt portion to be worn over the chest and shoulder.[4] Ribbel was not wearing her seat belt in the manner in which it is designed and generally understood to be worn.

Second, we need not delve into the statute's legislative history to know that the legislature did not enact the statute merely to restrict motorists' movement; rather, it is clear that the legislature's intent in enacting this statute was to prevent injury and death resulting from motor vehicle accidents.[5] The ICA's construction of the statute, which allows motorists to use the seat belt assembly in a manner in which it is not intended to be used—and in fact, causes more injury—is contrary to the legislature's intent. Indeed, Officer Taguma presented uncontroverted testimony that wearing the seat belt in the manner in which Ribbel wore the shoulder harness could cause severe injuries to her upper body and internal organs. Accordingly, the ICA gravely erred in interpreting the seat belt statute and concluding that Ribbel's use of the seat belt assembly complied therewith.[6]

---

4. This general understanding is supported by federal safety standards. Ribbel's car was equipped with a "Type 2" seat belt assembly, which is a combination of pelvic and upper torso restraints. Safety Standard No. 209, 49 C.F.R. § 571.209, S3. "Upper torso restraint" means "a portion of a seat belt assembly intended to restrain movement of the chest *and shoulder regions*." *Id.* (emphasis added). "A Type 2 seat belt assembly shall provide upper torso restraint without shifting the pelvic restraint into the abdominal region." *Id.* at S4.1(c). The way in which Ribbel was wearing her seat belt did not provide complete upper torso restraint because it did not restrain movement of her shoulder region, and

thus, was not the way in which the seat belt assembly was designed to be worn.

5. While we need not examine the statute's legislative history to know the legislature's intent in enacting the seat belt statute, the legislative history does support and make clear that the purpose of the statute is to decrease the number of unnecessary injuries and fatalities in traffic accidents. *See infra* Section III.B.

6. Because we hold that Ribbel clearly violated the Hawai'i seat belt statute, we find the New York cases relied upon by the ICA unpersuasive, and do not address them further herein.

B. *The ICA's Interpretation is Inconsistent With the Legislative Intent of the Statute and Would Lead to Absurd Results.*

Inasmuch as the plain language of the seat belt statute is clear on its face, there was no need for the ICA to resort to the use of the doctrine of *in pari materia*[7] or to examine the legislative history of the statute. *State v. Smith*, 103 Hawai'i 228, 234, 81 P.3d 408, 414 (2003) (stating that "it is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning") (internal quotation signals and citations omitted). Nevertheless, assuming, *arguendo*, that the statute is ambiguous, we agree with the State that the ICA's construction of the seat belt statute should be rejected because it yields an absurd result inconsistent with the purposes and policies of the statute.

HRS § 1–15 (1993) provides:

Where the words of a law are ambiguous:

(1) The meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

(2) The reason and spirit of the law, and the cause which induced the legislature to enact it, may be considered to discover its true meaning.

(3) Every construction which leads to an absurdity shall be rejected.

An examination of the legislative history of the seat belt statute elucidates the "reason and spirit of the law, and the cause which induced the legislature to enact it." *See Peterson*, 85 Hawai'i at 328, 944 P.2d at 1271 ("[T]he courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool." (Block quotation format and citation omitted.)). The seat belt statute was enacted in 1985 in order to, *inter alia*, "require operators of motor vehicles to be restrained by a seat belt assembly[.]" Hse.

Stand. Comm. Rep. No. 330, in 1985 House Journal, at 1133; Sen. Stand. Comm. Rep. No. 881, in 1985 Senate Journal, at 1277. In passing the mandatory seat belt law, the Transportation and Judiciary Committees stated, in relevant part:

Your Committees find that in the last ten years in Hawaii there have been an average of between 16,000 and 17,000 traffic accidents, involving an average of 24,000 drivers and 5,000 passengers per year. Your Committees also find that seat belt use is the single most cost-effective highway safety measure available.

. . . .

The Department of Transportation provided your Committees with statistics indicating "if everyone used a seat belt on every trip, motor vehicle occupant fatalities could be expected to drop about 57% and injuries about 60 to 70%".

Your Committees also find that the opposition to seat belt legislation is rooted in the belief that seat belt laws infringe upon an individual's right of choice. However, the enormous social cost of unnecessary death and injury justifies any possible minimal infringement on the right of choice of the individual caused by requiring him or her to wear a seat belt in a vehicle being operation on a public road.

Hse. Stand. Comm. Rep. No. 330, in 1985 House Journal, at 1133–34. The Ways and Means Committee additionally noted, in relevant part:

Your Committee finds that seat belts are a cost-effective and efficient way to reduce the number and severity of injuries and the fatalities resulting from motor vehicle accidents. Your Committee believes that a law requiring seat belt usage by front seat passengers will increase the number of people who wear seat belts and thus will promote the safety and welfare of the entire State.

Sen. Stand. Comm. Rep. No. 881, in 1985 Senate Journal, at 1277.

---

7. HRS § 1–16 (1993) provides: "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What

is clear in one statute may be called in aid to explain what is *doubtful* in another." (Emphasis added.)

Inasmuch as the clear purpose of the seat belt statute is to protect motorists' safety, it would be absurd to read it as permitting improper use of a seat belt assembly that could cause serious injury to motorists. The ICA's construction of the statute, however, would allow motorists to utilize the seat belt assembly in any number of ways that are potentially dangerous as long as the assembly was in any way restricting the motorists' movement. For example, according to the ICA's interpretation, a motorist would be in compliance with the statute if the person simply wrapped their arm in the seat belt, thereby restricting the person's movement, but clearly not protecting the person's safety. Additionally, the ICA's conclusion that the seat belt statute does not require *proper* restraint because the child passenger restraint statute uses the word "proper" while the seat belt statute does not, is absurd. Certainly, the legislature did not intend to only protect children under the age of four and not any other passengers. Because the ICA's construction leads to an absurdity, it should be rejected. Accordingly, Ribbel's use of the seat belt assembly constituted a violation of the seat belt statute and the ICA gravely erred in concluding otherwise.

## IV. *CONCLUSION*

Based on the foregoing, we hold that the ICA gravely erred in interpreting the seat belt statute. We therefore reverse the ICA's decision, but vacate the district court's judgment and remand for entry of a replacement judgment in favor of the State that complies with the applicable statutes governing traffic infractions.

Dissenting Opinion by LEVINSON, J.

Because I believe that the Intermediate Court of Appeals correctly decided this case, I respectfully dissent.