**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000150
30-JUN-2020
08:04 AM**

NO. CAAP-18-0000150

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
RYAN M. GIUGLIANO, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
(CASE NO. 3DTA-17-00652)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Chan and Hiraoka, JJ.)

Defendant-Appellant Ryan M. Giugliano (Giugliano) appeals from the Judgment and Notice of Entry of Judgment, filed on February 28, 2018, in the District Court of the Third Circuit (District Court).[1]

Giugliano was convicted of Operating a Vehicle Under the Influence of an Intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1) (Supp. 2017).[2]

---

[1] The Honorable Margaret K. Masunaga presided.

[2] HRS § 291E-61(a) states, in relevant part:

**§291E-61  Operating a vehicle under the influence of an intoxicant.**  (a)  A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1)  While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

On appeal, Giugliano contends that the District Court erred by: (1) denying his Motion to Suppress and (2) admitting the results of the Horizontal Gaze Nystagmus (HGN) test.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Giugliano's points of error as follows:

(1) Giugliano contends that the District Court erred in denying the suppression of his post-seizure verbal statements and non-verbal communicative responses because he was neither advised of his prearrest right to remain silent when Hawaiʻi County Police Officer Bradley Llanes (Officer Llanes) detained Giugliano during an investigatory traffic stop, nor was he advised of his Miranda[3] rights prior to being subjected to custodial interrogation by Officer Llanes.

Giugliano relies on State v. Tsujimura, 140 Hawaiʻi 299, 400 P.3d 500 (2017), in arguing that he should have been advised of his prearrest right to remain silent once he was stopped and that a failure to do so required suppression of his verbal statements and non-verbal communications. In Tsujimura, the supreme court recognized that the right against self-incrimination attaches before arrest under article I, section 10 of the Hawaiʻi Constitution. Id. at 310-11, 400 P.3d at 511-12. The court further held that "the State may not use as substantive proof of guilt a defendant's prearrest silence that occurs at least as of the time of detention, for doing so would

_____

[3]    Miranda v. Arizona, 384 U.S. 436 (1966).

A critical safeguard [of the privilege against self-incrimination] is the Miranda warning: an accused must be "warned that he or she had a right to remain silent, that anything said could be used against him or her, that he or she had a right to the presence of an attorney, and that if he or she could not afford an attorney one would be appointed for him or her."

State v. Kazanas, 138 Hawaiʻi 23, 34, 375 P.3d 1261, 1272 (2016) (quoting State v. Ketchum, 97 Hawaiʻi 107, 116, 34 P.3d 1006, 1015 (2001)).

violate the right against compelled self-incrimination under article I, section 10 of the Hawaiʻi Constitution." Id. at 314, 400 P.3d at 515.

Tsujimura does not stand for the proposition that a defendant must be informed of his right to remain silent at the initiation of a traffic stop. Tsujimura involved the use of a defendant's prearrest silence as substantive proof of guilt, rather than using a defendant's prearrest statements and acts as substantive proof of guilt. Thus, Tsujimura is distinguishable and Giugliano's reliance on that case is misplaced.

Giugliano next contends that his verbal statements, including his responses to medical rule-out questions, and non-verbal communicative acts during his participation in the standardized field sobriety tests (SFSTs) should have been suppressed because they resulted from custodial interrogation and he was not first advised of his Miranda rights.

> The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawaiʻi Constitution. See State v. Wilson, 92 Hawaiʻi 45, 48, 987 P.2d 268, 271 (1999) (citations omitted).

State v. Kaleohano, 99 Hawaiʻi 370, 375, 56 P.3d 138, 143 (2002).

> Where an individual is being subjected to custodial interrogation, he may not be asked any questions without his first being advised of his right to remain silent, that anything he says can and will be used against him, that he has the right to have his attorney present, and that if he cannot afford counsel, one will be appointed for him prior to any interrogation. Miranda v. Arizona, 384 U.S. 436, 467-474 (1966); State v. Santiago, 53 Haw. 254, 492 P.2d 657 (1971). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." [Miranda], 384 U.S. at 444.

State v. Kalai, 56 Haw. 366, 368, 537 P.2d 8, 11 (1975) (emphasis omitted).

"To determine whether 'interrogation' is 'custodial,' we look to the totality of the circumstances, focusing on 'the

place and time of the interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and any other relevant circumstances.'" State v. Ah Loo, 94 Hawaiʻi 207, 210, 10 P.3d 728, 731 (2000) (brackets omitted) (quoting State v. Melemai, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982)). "In this regard, we have acknowledged that 'no precise line can be drawn' between 'custodial interrogation,' on the one hand, and 'permissible general on-the-scene questioning,' on the other." Id. (quoting State v. Patterson, 59 Haw. 357, 362, 581 P.2d 752, 755-56 (1978)).

On this appeal of the lower court's denial of a motion to suppress, we look at both the record of the hearing on the motion to suppress and the record of the trial. State v. Vinuya, 96 Hawaiʻi 472, 481, 32 P.3d 116, 125 (App. 2001). At the hearing on the Motion to Suppress, Officer Llanes testified that he initiated a traffic stop of Giugliano on suspicion of not wearing a seat belt while operating his vehicle[4] in the vicinity of the Old Airport Beach Park in the County of Hawaiʻi. Upon stopping Giugliano, Officer Llanes informed Giugliano of the reason he was stopped and then observed Giugliano to have red, watery, glassy eyes and a strong odor of intoxicants emanating from him. Based on those observations, Officer Llanes asked Giugliano to exit the vehicle and to participate in the SFSTs. At trial, Officer Llanes additionally stated that, prior to administering the SFSTs,[5] he asked Giugliano medical rule-out

---

[4]     HRS § 291-11.6, entitled "Mandatory use of seat belts, when, penalty" provides in relevant part:

> (a)  Except as otherwise provided by law, no person shall operate a motor vehicle upon any public highway unless the person is restrained by a seat belt assembly and all passengers in the front or back seat of the motor vehicle are restrained by a seat belt assembly or are restrained pursuant to section 291-11.5 if under eight years of age.

[5]     Officer Llanes testified at trial that the SFSTs consist of the HGN test, Walk-and-Turn test, and the One-leg Stand test.

4

questions.[6]  Giugliano responded "no" to all of the questions, but noted that he normally stutters.  Officer Llanes then instructed Giugliano on how to do the SFSTs and asked if he understood the instructions, which Giguliano indicated he did.  Giugliano then exited his vehicle and participated in the SFSTs, after which he was placed under arrest for OVUII.  The record indicates that Giugliano was also cited for operating his vehicle without being restrained by a seat belt assembly, which proceeded as a separate case.

Giugliano claims that he was in custody because, "[c]learly, at the point where Officer Llanes requested that Giugliano get out of his car, Giguliano was the focus of an OVUII investigation and he was not free to leave."

In Ah Loo, the court stated:

> [W]e affirm the principle that, when an officer lawfully "seizes" a person in order to conduct an investigative stop, the officer is not required to inform that person of his or her Miranda rights before posing questions that are reasonably designed to confirm or dispel -- as briefly as possible and without any coercive connotation by either word or conduct -- the officer's reasonable suspicion that criminal activity is afoot.

94 Hawaiʻi at 212, 10 P.3d at 733.  Ah Loo makes clear that a defendant is not in custody for purposes of Miranda merely because he or she has been pulled over pursuant to a valid traffic stop.  Kaleohano, 99 Hawaiʻi at 376, 56 P.3d at 144.  The court in Ah Loo stated:

> [A]n individual may very well be "seized," within the meaning of article I, section 7 of the Hawaiʻi Constitution (inasmuch as, "given the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave") and yet not be "in custody," such that Miranda warnings are required as a precondition to any questioning.

94 Hawaiʻi at 211, 10 P.3d at 732 (citation omitted).

---

[6]      Officer Llanes testified at trial that the medical rule-out questions consisted of asking Giugliano: (1) whether he had any physical defects or speech impediments; (2) whether he was under the care of a doctor or dentist; (3) whether he was blind in either eye or had an artificial eye; (4) whether he was under the care of an eye doctor; (5) whether he was currently taking any medication; and (6) whether he was epileptic or diabetic.

If probable cause to arrest or sustained and coercive questioning are present, then questions posed by the police could amount to custodial interrogation. Kaleohano, 99 Hawaiʻi at 377, 56 P.3d at 145.

Unlike cases in which we have held that a defendant was in custody almost immediately after being stopped because the police officer had probable cause to arrest the defendant for a criminal offense, see State v. Sagapolutele-Silva, No. CAAP-19-0000491, 2020 WL 1699907, at *6 (Haw. App. Apr. 8, 2020), as corrected (June 1, 2020), as amended (June 8, 2020), Giugliano was stopped by the officer for failing to wear a seat belt, in violation of HRS § 291-11.6, which is a civil traffic infraction and not a criminal offense. See State v. Ribbel, 111 Hawaiʻi 426, 428, 142 P.3d 290, 292 (2006). Giugliano was therefore not in custody at the moment he was pulled over for the traffic stop. See State v. Kuba, 68 Hawaiʻi 184, 188, 706 P.2d 1305, 1309 (1985) ("Where . . . the seizure of the defendant is reasonable to investigate a traffic violation and the investigating police officer engages in legitimate, straightforward, and noncoercive questioning necessary to obtain information to issue a traffic citation, there is no custodial interrogation; no Miranda warnings are required before the police officer begins asking questions.").

Contrary to his assertion, Giugliano was also not in custody for OVUII at the point where Officer Llanes observed Giuglano to have red, watery, glassy eyes and an odor of intoxicants about him, and requested that Giugliano exit the vehicle. Giugliano's red, watery, glassy eyes and the strong odor of intoxicants emanating from him were sufficient to justify Officer Llanes asking Giugliano to exit the vehicle. See Vallesteros, 84 Hawaiʻi at 302, 933 P.2d at 639 ("[A] police officer must have at least a reasonable basis of specific articulable facts to believe a crime has been committed to order a driver out of a car after a traffic stop" (quoting State v.

6

Kim, 68 Haw. 286, 290, 711 P.2d 1291, 1294) (1985)); State v. Barrickman, 95 Hawaiʻi 270, 274-77, 21 P.3d 475, 479-82 (App. 2001) (holding that there was reasonable suspicion to investigate driving while intoxicated based on defendant's glassy eyes and smell of alcohol on breath).  However, these observations did not initially amount to probable cause to arrest Giugliano for OVUII. See Sagapolutele-Silva, No. CAAP-19-0000491, 2020 WL 1699907, at *6 (determining that police did not initially have probable cause to arrest a defendant for OVUII based upon noticing she had red, watery, and glassy eyes and an odor of alcohol about her).  As a result, Giugliano was not in custody at the time Officer Llanes requested that Giugliano exit his vehicle and proceeded to ask Giugliano the medical rule-out questions.  Therefore, Miranda warnings were not required at that point and the District Court did not err in admitting Giugliano's responses to the medical rule-out questions.  See Ah Loo, 94 Hawaiʻi at 211, 10 P.3d at 732; Kuba, 68 Haw. at 184, 706 P.2d at 1306 (holding that Miranda warnings were not required before investigative questioning regarding suspicion of alcohol or drug impairment during a valid traffic stop); State v. Wyatt, 67 Haw. 293, 300-01, 687 P.2d 544, 550 (1984) (holding that, during a valid traffic stop, police officer was not required to issue Miranda warnings prior to asking motorist if she had been drinking).

        The District Court also did not err in admitting the observations of Giugliano's performance on the SFSTs or Giugliano's responses to being asked to participate in the SFSTs and to the instructions.  The right against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in developing evidence which may be used against him.  Wyatt, 67 Haw. at 302, 687 P.2d at 551.  In Wyatt, the court stated that observations of a defendant's performance on the SFSTs was an exhibition of physical characteristics of coordination.  Id. at 303, 687 P.2d at 551.  Thus, the Wyatt court held that since

7

performance on the SFSTs was neither communication nor testimony, the trial court did not err by refusing to suppress the SFST observations.  Id. at 301-03, 687 P.2d at 550-51.  Similarly, except as discussed *infra*, the District Court did not err in admitting Officer Llanes's observation of Giugliano's performance on the SFSTs.  The District Court also did not err in admitting Giugliano's responses to being asked to participate in the SFSTs and to the instructions because these questions are necessarily attendant to a legitimate police procedure and did not amount to "interrogation."  See Pennsylvania v. Muniz, 496 U.S. 582, 605 (1990) (determining that a police officer's questioning of a defendant regarding whether the defendant understood the field sobriety test instructions and wished to submit to the test did not amount to an "interrogation" because they were "limited and focused inquiries [that] were necessarily 'attendant to' the legitimate police procedure, and were not likely to be perceived as calling for any incriminating response." (citation omitted)).

(2) Giugliano claims that the District Court abused its discretion by admitting the result of the HGN test because it lacked proper foundation and could not be used as substantive evidence of impairment.  Giugliano further asserts that the error was not harmless.

In State v. Ito, this court held: "Before HGN test results can be admitted into evidence in a particular case, . . . it must be shown that (1) the officer administering the test was duly qualified to conduct the test and grade the test results; and (2) the test was performed properly in the instant case."  90 Hawaiʻi 225, 244, 978 P.2d 191, 210 (App. 1999) (citations omitted).  We further concluded that the evidence presented at the trial in that case failed to demonstrate that the officer was duly qualified to conduct the HGN test and grade the test results because, *inter alia*, it was not clear whether a standard training program that the officer received met the requirements of the National Highway Traffic Safety Administration and whether the

officer received periodic retraining to refresh himself on his HGN test administration skills. Id.

In this case, Officer Keith Nacis (Officer Nacis) testified that the National Highway Transportation Safety Administration, and not the National Highway Traffic Safety Administration, provided him with a manual which he used to train Officer Llanes. Even if Officer Nacis's misidentification of the entity is excused, there was no evidence that the training Officer Llanes received met the National Highway Traffic Safety Administration (NHTSA) requirements. There was no evidence as to what the manual stated regarding training requirements and whether Officer Llanes met those requirements. Officer Llanes stated that he was provided a manual during training but could not recall if it was from the NHTSA. Officer Nacis also stated that he did not instruct officers during training to check themselves on a monthly basis to make sure they can estimate a 45 degree angle on the HGN test. Officer Llanes's testimony did not indicate that he engaged in periodic retraining to refresh himself on his HGN test administration skills. Thus, there was insufficient evidence to demonstrate that Officer Llanes was duly qualified to administer the HGN test and grade the results. Because there was insufficient foundational evidence that Officer Llanes was qualified to administer and grade the test results, we need not address whether he properly performed the HGN test in the instant case. Therefore, the District Court erred by admitting the results of the HGN test. Based on our determination that the District Court erred in the admission of this evidence, it is unnecessary to address Giugliano's contention that the results were inadmissible outside of the context of probable cause determinations.

Nonetheless, the erroneous admission of the HGN test results was harmless because there was a wealth of overwhelming and compelling evidence tending to show Giugliano was guilty of OVUII beyond a reasonable doubt. See State v. Mitchell, 94

Hawaiʻi 388, 400, 15 P.3d 314, 326 (App. 2000).

At trial, Officer Llanes testified as a witness with specialized training to administer the other SFSTs and from personal experience. Giugliano does not contend that there was a lack of foundation regarding Officer Llanes's testimony pertaining to his observations of the other SFSTs. See Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(4) (2016) ("Points [of error] not presented [in the opening brief] in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented."); HRAP Rule 28(b)(7) (2016) ("Points not argued [in the opening brief] may be deemed waived."). Therefore, Officer Llanes could testify about his observations of Giugliano's performance on the SFSTs, other than the HGN test, and give an opinion, based on such observations, whether Giugliano was intoxicated. See State v. Ferrer, 95 Hawaiʻi 409, 429, 23 P.3d 744, 764 (App. 2001) ("[I]t is permissible for a police officer to testify as a lay witness about his or her observations of a defendant's performance on various [S]FSTs and to give an opinion, based on such observations, that the defendant was intoxicated. However, unless proper foundation is laid, it is improper for a police officer to testify that in his or her opinion, a defendant 'failed' or 'passed' a [S]FST." (citing State v. Nishi, 9 Haw. App. 516, 852 P.2d 476 (1993) and State v. Toyomura, 80 Hawaiʻi 8, 904 P.2d 893 (1995)).

At trial, Officer Llanes testified that Giugliano's behavior was erratic, switching from compliant and calm to argumentative and angry, and that he was repeating himself. Officer Llanes also observed Giugliano to have red, watery, glassy eyes, and a strong odor of an intoxicating beverage emanating from his breath and person. During the Walk-and-Turn test, Giugliano stepped out of the instructional position, failed to keep his balance, missed several heel-to-toe steps during the initial nine steps, took ten steps instead of nine steps, did not

turn as instructed, raised both arms almost parallel to the ground, and stopped walking, all contrary to the instructions. During the One-leg Stand test, Giugliano raised his arms approximately two feet from his waist, put his foot down and asked if the test was done after counting to ten, and put his foot back up and began counting from one when he was informed the test was not done, all contrary to the instructions. Officer Llanes testified that based on his training and personal experience, these were indicia or clues of intoxication and that Giugliano was unable to operate his vehicle in a safe manner. On this record, there was substantial evidence for a trier of fact to conclude that Giugliano was guilty beyond a reasonable doubt of OVUII. State v. Matavale, 115 Hawaiʻi 149, 157-58, 166 P.3d 322, 330-31 (2007).

Therefore, IT IS HEREBY ORDERED that the Judgment and Notice of Entry of Judgment, filed on February 28, 2018, in the District Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawaiʻi, June 30, 2020.


On the briefs:

Kori A. Weinberger,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellee.

Saisamoa F. Grey Price,
Deputy Public Defender,
for Defendant-Appellant.

/s/ Lisa M. Ginoza
Chief Judge


/s/ Derrick H. M. Chan
Associate Judge


/s/ Keith K. Hiraoka
Associate Judge

11