STATE of Indiana, Appellant–Plaintiff,

v.

Shawn MASSEY, Appellee–Defendant.

No. 49A02–0712–CR–1136.

Court of Appeals of Indiana.

May 30, 2008.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Ellen M. O'Connor Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Indiana Code section 9–19–10–2 (the seatbelt statute) provides, in relevant part, that each occupant of a motor vehicle equipped with a safety belt "shall have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion." Is an occupant who has the lap belt fastened but who is not wearing the shoulder belt across his shoulder violating the statute? The purpose of the seatbelt statute and the language chosen by the legislature lead us to conclude that an occupant must have the lap belt fastened and wear the shoulder strap of the seatbelt across his shoulder to comply with the statute.

The State of Indiana appeals the trial court's grant of appellee-defendant Shawn Massey's motion to suppress evidence found during an allegedly invalid traffic stop. After stopping Massey's vehicle for a seatbelt violation, officers discovered that her driving privileges had been suspended, and the State charged her with class D felony operating a motor vehicle

while a habitual traffic violator. Massey filed a motion to suppress, which the trial court granted. On appeal, the State argues that the trial court erred by granting Massey's motion because her front seat passenger was violating the seatbelt statute when her vehicle was stopped. Concluding that the evidence indisputably shows that the officers' observations provided reasonable suspicion to stop Massey's vehicle and, because Massey had committed an infraction, the officers had statutory authority to ask for her driver's license, we reverse the trial court's grant of the motion to suppress and remand for further proceedings.

## FACTS

On June 9, 2007, police officers were conducting a seatbelt enforcement zone on Washington Street in Indianapolis. Indiana University Police Department Officer Michael Tharp was working as a "spotter, which means [he] stood in front of the zone—at the front of the zone and [he] would observe the cars passing by and radio in what—if there were any vehicles where the passengers or drivers had seatbelt violations for the officers down on the zone to stop." Tr. p. 6. Upon spotting a violation, Officer Tharp would radio Beech Grove Police Department Officer Scott Ferrer, who would stop the vehicle.

While working the zone, Officer Tharp spotted Massey driving a black Hyundai with "a juvenile in the [passenger seat] in the car that didn't appear to have [her] seatbelt on properly." *Id.* Specifically, Officer Tharp "could not see the shoulder belt going over across the top of the shoulder. All [he] could see is the seatbelt behind the shoulder ... [and he] couldn't tell if it was unbuckled or was improperly on the passenger." *Id.* at 8. Officer Tharp radioed Officer Ferrer and notified him of the apparent infraction. Officer

Ferrer saw Massey's vehicle approaching and "observed as the vehicle was coming toward [him] the front seat occupant reach behind them, grab[ ] the seatbelt and pull[ ] it down in front of [her]." *Id.* at 16.

Officer Ferrer signaled for Massey to stop her vehicle. Upon approaching the vehicle, Officer Ferrer observed that the passenger's seatbelt was fastened across her lap but the shoulder strap was "in her armpit" instead of being positioned across her shoulder. *Id.* at 17. Officer Ferrer asked Massey the juvenile's age, and Massey told him that she was twelve years old. Officer Ferrer asked for Massey's driver's license, which she was unable to produce. Officer Ferrer conducted a name search on the computer in his police vehicle and discovered that Massey was a habitual traffic offender whose driving privileges were suspended.

On June 10, 2007, the State charged Massey with class D felony operating a vehicle while a habitual traffic violator. On September 19, 2007, Massey filed a motion to suppress "all evidence obtained as a result of the stopping of her vehicle and person." Appellant's App. p. 12. Specifically, Massey argued that Officer Ferrer did not have probable cause to stop her vehicle and investigate the status of her license. The trial court held a hearing on October 6, 2007, and granted Massey's motion on December 4, 2007, finding:

6.... The State is correct here that when defendant Massey was unable to provide a driver's license the officer had reasonable suspicion to conduct further investigation into the status of her driver's license, however [Massey] is challenging the propriety of the initial stop and that is the Court's primary concern in evaluating the evidence presented.

7. The parties direct the Court to Indiana Code 9–19–10–2 which states:

Sec. 2. Each occupant of a motor vehicle equipped with a safety belt that:

(1) meets the standards stated in the Federal Motor Vehicle Safety Standard Number 208 (49 CFR 571.208); and

(2) is standard equipment installed by the manufacturer;

*shall have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion.*

8. [Massey] argues no legal definition exists as to how a safety belt is "properly fastened". The State has urged the Court that a common sense approach is appropriate when considering the plain meaning of "properly fastened." The State also indicated at hearing that the appropriate code section in the Code of Federal Regulations also does not contain a precise definition of how a safety belt should be properly fastened. Generally, the Court agrees with the State's position that common language should be followed when there is clear evidence of a violation of a state statute; however the evidence is not clear in this case.

9. Under the evidence presented in this case, the Court is not convinced that the officers had reasonable suspicion to detain defendant. The Court is concerned with Officer Tharp's statement that he could not tell if the safety belt was unbuckled or improperly on the front seat passenger. Lt. Ferrer's observations of the vehicle in motion were very brief and at that time the front seat passenger had the safety belt fastened. At all times [Massey] had her safety belt fastened. For these reasons the Court does GRANT [Massey's] Motion to Suppress.

*Id.* at 15–17 (emphasis added). The State now appeals.[1]

### DISCUSSION AND DECISION

The State focuses exclusively on construing the "properly fastened" language contained in the seatbelt statute, arguing that Massey's passenger's seatbelt was not properly fastened because, as a matter of law, the statute "must mean both the lap and shoulder portion of a seatbelt [are] being used for their designed purpose." Appellant's Br. p. 4. However, to resolve this appeal, we must separate our analysis into two parts. First, did the officers possess reasonable suspicion to stop Massey's vehicle? Second, once her vehicle was stopped, did the officers have the authority to ask Massey for her driver's license? In resolving the second issue, we must analyze the language of the seatbelt statute to determine whether the manner in which the passenger was wearing her seatbelt was contrary to the seatbelt statute.

On appeal from the grant of a motion to suppress, the State appeals from a negative judgment and must show that the trial court's ruling on the motion to suppress was contrary to law. *State v. Estep,* 753 N.E.2d 22, 24–25 (Ind.Ct.App.2001). We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. *Id.* at 25. We neither reweigh the evidence nor judge the credibility of witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.*

### I. Initial Stop

Reasonable suspicion entails some minimum level of objective evidentiary justification. *Ransom v. State,* 741 N.E.2d 419, 421 (Ind.Ct.App.2000). A police officer may stop a vehicle if there is an objectively justifiable reason to do so and the stop may be justified on less than probable cause. *Id.* Due weight must be given to the specific, reasonable inferences that the officer is entitled to draw from the facts in light of his experience rather than an officer's inchoate and unparticularized suspicion or "hunch." *Id.* On review, we consider whether the facts known by the police at the time of the stop were sufficient for a person of reasonable caution to believe that an investigation is appropriate. *State v. Rager,* 883 N.E.2d 136, 139 (Ind. Ct.App.2008). The grounds for such a suspicion must be based on the totality of the circumstances. *Id.*

While addressing the reasonable suspicion requirement for seatbelt violations, our Supreme Court has held that

> a police officer may not stop a motorist in Indiana for a possible seat belt violation unless that officer reasonably suspects that the driver or a passenger in the vehicle is not wearing a seat belt as required by law. This reasonable suspicion exists where the officer observes the driver or passenger under circumstances (e.g., bodily movement, distance, angle, lighting, weather) that would cause an ordinary prudent person to believe that the driver or passenger is not wearing a seat belt as required by law.

*Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind.1999). "In other words, [our Supreme Court] held that police may initiate a traffic stop based upon reasonable suspicion that the occupants in the front seat of a vehicle are not wearing seatbelts."

---

**1.** The State brings this appeal under Indiana Code section 35–38–4–2(5), which provides that the State may appeal an order granting a motion to suppress evidence if the "ultimate effect of the order is to preclude further prosecution."

*Pearson v. State,* 870 N.E.2d 1061, 1065 (Ind.Ct.App.2007), *trans. denied.*

The evidence in the record leads to one conclusion—Officers Tharp and Ferrer observed circumstances in Massey's vehicle that led them to reasonably conclude that a passenger in her vehicle was not wearing a seatbelt. Specifically, Officer Tharp *"could not see the shoulder belt* going over across the top of [the passenger's] shoulder. All [he] could see is the seatbelt behind the shoulder ... [and he] couldn't tell if it was unbuckled or was improperly on the passenger." Tr. p. 8 (emphasis added). He relayed his observations to Officer Ferrer, who "observed as the vehicle was coming toward [him] the front seat occupant reach behind them, grab[ ] the seatbelt and pull[ ] it down in front of [her]." *Id.* at 16. In sum, the positioning of the passenger's seatbelt combined with her potentially incriminating movements led the officers to reasonably conclude that she was not wearing a seatbelt. This provided the requisite level of suspicion to stop Massey's vehicle.

We acknowledge that we are not permitted to reweigh the evidence or judge witness credibility, and we have not done so. The trial court's comments in the ninth paragraph of the suppression order seem directed at the manner in which the juvenile was wearing her seatbelt and the brief amount of time that the officers observed the vehicle before stopping it. However, the evidence in the records shows that, at the time of the stop, the officers undeniably possessed more than the "minimum level of objective evidentiary justification" that reasonable suspicion requires. *Ransom,* 741 N.E.2d at 421. Thus, we conclude that they had reasonable suspicion to stop Massey's vehicle.

## II.  *Asking for a Driver's License*

■ An officer who believes in good faith that a person has committed an infraction or ordinance violation may detain the person for a time sufficient to obtain, among other things, the person's name, address, date of birth, and driver's license. Ind.Code § 34–28–5–3. However, " 'an officer's mistaken belief about what constitutes a violation does not amount to good faith. Such discretion is not constitutionally permissible.' " *Rager,* 883 N.E.2d at 139–140 (quoting *Ransom,* 741 N.E.2d at 422). Therefore, to determine whether Officer Ferrer had the authority to ask Massey for her driver's license pursuant to Indiana Code section 34–28–5–3, we must first determine whether Massey committed an infraction.

Officer Ferrer stopped Massey's vehicle because he believed that her passenger was not properly wearing a seatbelt. As previously noted, the statute provides, in relevant part, that each occupant of a motor vehicle equipped with a safety belt "shall have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion." I.C. § 9–19–10–2. Indiana Code section 9–19–11–3.3 provides that it is a class D infraction for a person to operate a motor vehicle in which there is a child less than sixteen years of age who is not properly fastened by a safety belt. Thus, if Massey's twelve-year-old passenger was not complying with the seatbelt statute, Massey was committing an infraction and Officer Ferrer had statutory authority to ask for her name and driver's license.

■ The interpretation of a statute is a question of law that we review de novo. *State v. Rans,* 739 N.E.2d 164, 166 (Ind.Ct.App.2000). We presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policies and goals. *Gauvin v. State,* 883 N.E.2d 99, 103 (Ind.2008). When a statute

is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. *Id.* When a statute is susceptible to more than one reasonable interpretation, it is ambiguous and must be construed to determine legislative intent. *Cochran v. State,* 859 N.E.2d 727, 729 (Ind.Ct.App. 2007).

The State argues that "the term 'properly fastened' must mean both the lap and shoulder portion of a seatbelt [are] being used for their designed purpose." Appellant's Br. p. 4. The State notes that we have previously held that "the Indiana seatbelt statute [ ] was enacted to promote highway safety and to protect Indiana citizens. . . . Highway safety is not merely a legitimate state interest; it is a compelling one." *Kelver v. State,* 808 N.E.2d 154, 159 (Ind.Ct.App.2004). Thus, the State argues that the legislature intended the term "properly fastened" to require an occupant to wear both the lap belt and the shoulder harness because

> [i]f the shoulder harness is behind the person's body or under their arm, that harness will not serve to restrain any portion of their upper body. The harness will not be doing what it was installed to do or what the statute intends for it to do, i.e. protect the occupant as fully intended and designed. . . . Thus, to receive the protection of the safety belt (and to fulfill the obvious purpose of the statute) an occupant must fasten the safetybelt "properly" around them. . . .

Appellant's Br. p. 6.

Massey disagrees with the State's statutory construction and argues that the State erroneously construes the statute to require that "not only must the safety belt be buckled, but the belt and shoulder harness must be positioned across the body in a particular manner." Appellee's Br. p.

11. Because the statute does not contain a definition for "properly fastened," Massey argues that the State's argument asks us to impermissibly construe the statute.

Because there is no applicable Indiana precedent, the State directs us to *State v. Ribbel,* a case decided by the Supreme Court of Hawaii. 111 Hawai'i 426, 142 P.3d 290, 296 (2006). While working at a seatbelt enforcement zone, an officer noticed that Ribbel, who was driving her vehicle toward the officer, was not wearing the shoulder harness of her seatbelt over her body. The officer stopped Ribbel's vehicle and ticketed her for violating Hawaii's seatbelt statute, which provides that no person "[s]hall operate a motor vehicle upon any public highway unless the person is restrained by a seatbelt assembly." Haw.Rev.Stat. § 291–11.6.

Although the district court found that Ribbel had violated the statute, the Court of Appeals reversed, concluding that Ribbel had complied with the statute because "this statute does not expressly require that a motorist be *properly* restrained by a seat belt assembly . . . Ribbel did not violate the statute inasmuch as she was 'restrained,' albeit improperly." 142 P.3d at 296 (emphasis in original) (citing *State v. Ribbel,* 111 Hawai'i 317, 141 P.3d 490, 494 (App.2006)). However, the Supreme Court of Hawaii reversed the Court of Appeals, holding that "the plain and obvious meaning of this statute is to require motorists to utilize the seat belt assembly in the manner in which it was designed to be worn so as to prevent injury and death." 142 P.3d at 296. Specifically, the *Ribbel* court noted that the manner in which the Court of Appeals construed the statute "yields an absurd result inconsistent with the purposes and policies of the statute" because "it is generally understood that requiring a person to be restrained by a seat belt assembly is requir-

ing the lap belt portion to be worn over the lap and the upper torso belt portion to be worn over the chest and shoulder." *Id.* at 296, 297.

Inasmuch as the clear purpose of Indiana's seatbelt statute is to "promote highway safety and to protect Indiana citizens[,]" *Kelver*, 808 N.E.2d at 159, we agree with the State that it would be illogical to construe the statute as permitting an occupant to wear a seatbelt improperly. Furthermore, Indiana's seatbelt statute explicitly provides that an occupant must have a seatbelt *"properly fastened about the occupant's body* at all times when the vehicle is in forward motion." I.C. § 9-19-10-2 (emphasis added). The legislature's decision to use the word "properly" with the phrase "about the occupant's body" leads us to conclude that it intended for an occupant to fasten the lap belt and wear the seatbelt's shoulder strap across his shoulder to comply with the seatbelt statute.

Applying this holding to the facts of the case, when Officer Ferrer approached the vehicle, he noticed that the juvenile in Massey's vehicle had her seatbelt fastened across her lap but that the shoulder strap was "in her armpit." Tr. p. 17. Because the seatbelt's shoulder strap was not positioned across her shoulder, the juvenile was not properly wearing her seatbelt and Massey, as the driver, had committed an infraction.[2] I.C. § 9-19-11-3.3. Because Massey had committed an infraction, Officer Ferrer had statutory authority to detain her for the time sufficient to ask for her name and driver's license. I.C. § 34-28-5-3. Thus, we conclude that the trial court erred as a matter of law when it granted Massey's motion to suppress and

we reverse and remand for further proceedings.

The judgment of the trial court is reversed and remanded for further proceedings.

NAJAM, J., and BROWN, J., concur.

---

2. We hasten to note that Indiana Code section 9-19-11-2 provides more stringent requirements regarding child restraint systems for children who are less than eight years old.

We emphasize that the juvenile in Massey's vehicle was twelve years old and that our holding is in no way meant to disregard statutory requirements for younger children.