## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEYS FOR APPELLANT**

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

**ATTORNEY FOR APPELLEE**

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Defendant,*

v.

Shelby L. Pieper,

*Appellee-Plaintiff.*

February 18, 2015

Court of Appeals Cause No.
19A05-1407-CR-303

Appeal from the Dubois Superior Court
Cause No. 19D01-1404-CM-288

The Honorable Mark R. McConnell, Judge

**Barnes, Judge.**

# Case Summary

The State appeals the trial court's grant of a motion to suppress evidence filed by Shelby Pieper. We affirm.

# Issue

The State raises one issue, which we restate as whether the trial court properly granted Pieper's motion to suppress evidence obtained during a traffic stop.

# Facts

On April 26, 2014, Trooper Jason Dunsworth of the Indiana State Police was driving west on State Route 164 in Dubois County at approximately 8:45 p.m. Trooper Dunsworth saw Pieper driving toward him in a Jeep with the top off and noticed that the person in the rear passenger seat of the Jeep, Austin Nordhoff, was sitting sideways with his leg hanging over the side of the Jeep and his feet near the tires. Pieper was not speeding, but Trooper Dunsworth turned around and initiated a traffic stop.

When Trooper Dunsworth approached the vehicle, Nordhoff had his seatbelt on and his legs inside the vehicle. Trooper Dunsworth first spoke with Nordhoff, who explained he was "goofing off" but had been wearing his seatbelt. Tr. p. 7. While speaking with Nordhoff, Trooper Dunsworth smelled alcohol and asked Nordhoff "if they were going to be doing anymore drinking." *Id.* at 8. Nordhoff said he was the only one that had been drinking. He then asked Pieper if he had been drinking, and Pieper said no. Trooper Dunsworth asked Pieper to get out of the vehicle "to check," and only then did Trooper

Dunsworth notice the smell of alcohol on Pieper.[1] *Id.* at 14. Trooper Dunsworth administered a field sobriety test, the result of which indicated Pieper was intoxicated, and a portable breath test, which indicated Pieper's blood alcohol level was .08.[2]

[5] The State charged Pieper with three counts of Class C misdemeanor operating a vehicle while intoxicated and one count of Class C misdemeanor illegal consumption of an alcoholic beverage by a minor. Pieper filed a motion to suppress evidence gathered during the traffic stop on the grounds that Trooper Dunsworth did not have probable cause or reasonable suspicion to initiate the traffic stop and that he detained Pieper longer than necessary to effectuate the traffic stop.

[6] Trooper Dunsworth testified at the suppression hearing that, based on the way Nordhoff was seated, he did not believe Nordhoff "was restrained, or had his seatbelt on." *Id.* at 6. Trooper Dunsworth explained that he could see the silhouette of Nordhoff's legs dangling over the side. Trooper Dunsworth testified, "I could not see, physically see his seatbelt, but from his positioning I don't see how he had it on." *Id.* at 12. When asked whether he could tell one

---

[1] At some point, Trooper Dunsworth saw two coolers in the backseat, but it is not entirely clear from his testimony whether he saw the coolers before or after he asked Pieper to get out of the vehicle.

[2] Trooper Dunsworth issued a citation to Nordhoff for not wearing a seatbelt, and Nordhoff later paid the ticket.

way or the other whether Nordhoff had his seatbelt on, Trooper Dunsworth stated, "No, Sir." *Id.*

[7] The trial court granted Pieper's motion to suppress. The trial court found and concluded:

> 7. The issue thus restated is whether a reasonable person would believe under the facts of this case that the rear passenger was not wearing a seat belt. Stated more succinctly, perhaps the issue can be stated as whether a person could have a seatbelt properly fastened about his body and still be able to position himself so as to allow his feet or legs to dangle outside this vehicle. . . . At approximately 8:45 p.m. on April 26, 2014, Trooper Dunsworth was driving up a hill westbound on State Rd. 164 at approximately 50 miles per hour. As the maroon Jeep, being operated by Defendant, crested the hill going eastbound at a distance of about fifty yards from the Trooper's vehicle, Trooper Dunsworth observed the silhouette of the legs of the rear occupant on the passenger side of the Jeep. He testified that the passenger's legs were positioned such a way that his feet were outside the vehicle over the rear wheels. Trooper Dunsworth could not physically see the passenger's seatbelt and could not tell one way or another if the passenger was wearing a seatbelt. When Trooper Dunsworth turned around and pulled Defendant over he approached the Jeep. By this time the passenger's legs were completely inside the vehicle. His seatbelt was properly fastened. In response to Trooper Dunsworth's questioning the passenger stated that he had had his seatbelt on when the vehicle was in motion. Trooper Dunsworth may have stated to the passenger that he couldn't tell if the passenger was wearing a seatbelt.
>
> 8. Trooper Dunsworth had no direct evidence that Defendant's passenger was not wearing his seatbelt. He had a hunch, or speculated, that the passenger was not wearing his seatbelt because he didn't think it would be possible for him to be wearing a seatbelt and still have his legs or feet hanging over the rear wheel. He had no other basis for his opinion or for the stop. It is the Court's experience the rear seats in a Jeep sit close to the floor and the sides of a Jeep are also relatively low to the floor such that it is highly possible for a back seat

passenger to be properly restrained by a seatbelt and still be able to have his legs or feet dangling over the side of the vehicle above the wheel. Thus, the position of the passenger's legs and feet by itself would not reasonably lead to a conclusion or reasonable suspicion that the passenger was not wearing a seatbelt. Without more than the mere observation of the passenger's legs or feet a stop would not be justified. Trooper Dunsworth had nothing more. The test for a stop cannot be that a passenger may or may not have been properly restrained. The officer must have evidence that the passenger was not properly restrained.

App. p. 26. The State now appeals.

## Analysis

[8] The State argues that the trial court erroneously granted Pieper's motion to suppress. When the State appeals from a negative judgment, it has the burden to show that the trial court's ruling was contrary to law. *State v. Keck*, 4 N.E.3d 1180, 1183 (Ind. 2014). "We evaluate the trial court's findings of fact deferentially, neither reweighing the evidence nor reassessing the credibility of the witnesses." *Id.* We will affirm if there is substantial evidence of probative value to support the judgment. *Id.* We review the trial court's conclusions of law, including a determination of reasonable suspicion, de novo. *Id.*

[9] The State first contends the trial court erroneously concluded that Trooper Dunsworth did not have reasonable suspicion under the Fourth Amendment to stop Pieper's vehicle.[3] When determining whether an officer had reasonable

---

[3] Because of our analysis of the claim under the United States Constitution, we need not address the State's Indiana constitutional analysis.

suspicion, "we consider whether the totality of the circumstances presented a particularized and objective basis for the officer's belief that the subject was engaged in criminal activity." *Id.* at 1184. "Reasonable suspicion entails some minimum level of objective evidentiary justification." *State v. Massey*, 887 N.E.2d 151, 155 (Ind. Ct. App. 2008), *trans. denied*. We must give due weight to the specific, reasonable inferences that the officer is entitled to draw from the facts in light of his or her experience rather than an officer's inchoate and unparticularized suspicion or "hunch." *Id.* We consider whether the facts known by the police at the time of the stop were sufficient for a person of reasonable caution to believe that an investigation is appropriate. *Id.* The grounds for such a suspicion must be based on the totality of the circumstances. *Id.*

[10] Indiana Code Section 9-19-10-2 requires each occupant of a motor vehicle equipped with a safety belt to "have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion." In determining whether a stop for a seat belt violation was reasonable under an Indiana constitutional analysis, our supreme court has held:

> that a police officer may not stop a motorist in Indiana for a possible seat belt violation unless that officer reasonably suspects that the driver or a passenger in the vehicle is not wearing a seat belt as required by law. This reasonable suspicion exists where the officer observes the driver or passenger under circumstances (*e.g.,* bodily movement, distance, angle, lighting, weather) that would cause an ordinary prudent person to believe that the driver or passenger is not wearing a seat belt as required by law.

*Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999).

[11] The State contends that Nordhoff's positioning created reasonable suspicion of a seatbelt violation and that the trial court "demanded certainty of wrongdoing where only reasonable suspicion was required." Appellant's Br. p. 11. The trial court's order included the correct legal standard and, in reaching its conclusion, the trial court correctly determined that Nordhoff's positioning alone did not create reasonable suspicion that he was not wearing his seatbelt.

[12] Trooper Dunsworth initiated the stop upon seeing a silhouette of Nordhoff's legs outside the Jeep. Trooper Dunsworth testified that he could not see Nordhoff's seatbelt and could not tell one way or the other if Nordhoff had his seatbelt on. Under these facts, we agree with the trial court that the totality of the circumstances did not create reasonable suspicion to justify the stop. We reach this conclusion mindful of our supreme court's recent observation that "our trial judges are able to see and hear the witnesses and other evidence first-hand. But the appellate bench, in a far corner of the upper deck, doesn't provide such a clear view. Remote from the hearing in time and frequently in distance, we review a cold paper record." *Keck*, 4 N.E.3d at 1185-86. The trial court was in a better position than us to assess Trooper Dunsworth's credibility regarding Nordhoff's positioning and what he saw that night.

[13] The State also argues that there was reasonable suspicion of reckless driving because Nordhoff's precarious position made it unreasonable for Pieper to continue to drive at a speed of fifty miles-per-hour. *See* Ind. Code § 9-21-8-52(a)(1). Although the prosecutor made this argument at the conclusion of the suppression hearing, Trooper Dunsworth did not testify that this was his basis

for initiating the traffic stop. In fact, when the prosecutor asked what the basis for the stop was, Trooper Dunsworth answered, "I don't believe that the way the rear passenger was seated, that he was restrained, or had his seatbelt on." Tr. p. 6. Trooper Dunsworth then testified that he first approached Nordhoff and asked if he had had his seatbelt on. Thus, Trooper Dunsworth's testimony does not support the State's position that the decision to stop Pieper was based on Pieper's purportedly reckless driving.[4]

[14] The State contends that, if the stop is objectively justified on reckless driving grounds, "it is a legitimate stop even if that was not the officer's stated purpose for conducting the stop." Appellant's Reply Br. p. 6. The State does not support this argument with any authority that is directly on point and, instead, cites cases for the general proposition that an officer's subjective beliefs do not control the Fourth Amendment analysis. *See, e.g., Fentress v. State*, 863 N.E.2d 420, 423 (Ind. Ct. App. 2007) ("A police officer's subjective belief concerning whether he had probable cause to arrest a defendant has no legal effect."); *Cudworth v. State*, 818 N.E.2d 133, 137 (Ind. Ct. App. 2004) (observing that a police officer's subjective belief of exigent circumstances is insufficient to justify a warrantless search); *see also Brigham City, Utah v. Stuart*, 547 U.S. 398, 404, 126 S. Ct. 1943, 1948 (2006) (explaining that an action is reasonable under the

---

[4] Later in its brief, the State asserts, "The only violation of law suspected by Trooper Dunsworth was that Nordhoff was not properly restrained by a seatbelt . . . ." Appellant's Br. p. 16. This is consistent with the prosecutor's acknowledgement at the suppression hearing that Trooper Dunsworth did not testify that he made the stop based on a suspicion of reckless driving. *See* Tr. p. 18.

Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances objectively justify the action). Although we agree with the general proposition that an officer's subjective reasons for initiating a traffic stop are not relevant, we believe that a stop must be based on the police officer's objectively reasonable justifications at the time the stop is made, not the State's post hoc theories. *See Webb v. State*, 714 N.E.2d 787, 789 (Ind. Ct. App. 1999) (rejecting the State's argument that a stop was justified because "the State has imputed to Officer Reddy a new theory for the stop despite Reddy's own testimony as to why he stopped Webb."); *State v. Nesius*, 548 N.E.2d 1201, 1203 (Ind. Ct. App. 1990) ("We do not believe the trial court erred by refusing to allow the State to supply—after the fact—a possible justification for the investigative stop not contemplated by the police officer at the time of the stop."); *see also Meredith v. State*, 906 N.E.2d 867, 870 (Ind. 2009) ("An officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred."). The after-the-fact claim of reckless driving is not a basis for reversing the trial court's decision.[5]

[15]    As a final matter, even if Nordhoff's positioning did create reasonable suspicion to justify the stop, "a vehicle, the contents of a vehicle, the driver of a vehicle,

---

[5] The State also contends that Trooper Dunsworth's community caretaking duty to address the dangerous situation justified the stop. The State, however, did not assert this theory to the trial court. As a general rule, a party may not present an argument or issue on appeal unless it was raised before the trial court. *Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). This argument is waived. *See id.*

or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter." I.C. § 9-19-10-3.1(a). Our supreme court has explained:

> The language of the Act and subsequent case law clearly dictate that in adopting the Act, the Legislature intended the statute to limit, rather than expand, police authority with respect to seat belt enforcement stops and sought to circumscribe the power of police to use a seat belt stop as an opportunity to inspect, search, or detain on other grounds, even if constitutional law would permit such police behavior. . . . [T]he Act simply does not permit investigatory behavior based solely on a seat belt violation unless circumstances arise after the stop that independently provide the officer with reasonable suspicion of other crimes.

*State v. Richardson*, 927 N.E.2d 379, 383 (Ind. 2010) (citing *Baldwin,* 715 N.E.2d 332).[6]

[16] Here, by Trooper Dunsworth's own testimony, he smelled alcohol on Nordhoff while speaking to him and asked if they were going to do more drinking. Nordhoff said he was the only one drinking. Trooper Dunsworth then asked Pieper if he had been drinking, and Pieper said no. Trooper Dunsworth testified that he then asked Pieper to get out of the vehicle "to check" if Pieper had been drinking. Tr. p. 14. Only after Pieper got out of the car did Trooper Dunsworth smell alcohol on Pieper. Until Pieper got out of the vehicle, nothing suggested Pieper had been drinking or was otherwise impaired.

---

[6] As our supreme court acknowledged, the seatbelt enforcement statute was amended in 2007 from Indiana Code Section 9-19-10-3 to Indiana Code Section 9-19-10-3.1, but the relevant language was unchanged. *See Richardson*, 927 N.E.2d at 382 n.4.

Although the State cites cases indicating that a police officer may ask the occupants of car to get out of the car during a traffic stop, none of those involve a seatbelt enforcement stop. *Cf. Richardson*, 927 N.E.2d at 382 (Ind. 2010) (declining to address constitutional arguments where challenge to police conduct could be resolved on statutory grounds); *Pearson v. State*, 870 N.E.2d 1061, 1066 (Ind. Ct. App. 2007) (recognizing Fourth Amendment jurisprudence but concluding it is inapplicable to a traffic stop based a seatbelt violation), *trans. denied*. Given the legislature's clear intent to limit the scope of seatbelt enforcement stops, we conclude that the circumstances after the stop did not provide Trooper Dunsworth with reasonable suspicion that Pieper had been drinking to allow further investigation of Pieper. Thus, Trooper Dunsworth unlawfully exceeded the parameters of the seatbelt enforcement stop by continuing to investigate whether Pieper had been drinking. *See Richardson*, 927 N.E.2d at 384 (concluding that additional questioning of a driver about an "unusual bulge" in his pocket that led to the discovery of cocaine contravened Indiana Code Section 9-19-10-3.1 where the officer remembered the driver from a previous stop that was without incident and the driver was immediately cooperative and admitted he was not wearing his seatbelt).

## Conclusion

[17] Because the stop was not supported by reasonable suspicion, the State has not established that the granting of the motion to suppress was contrary to law. We affirm.

Affirmed.

May, J., and Pyle, J., concur.